IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REGINALD PITTMAN, *By and through his*
*Guardian and Next Friend, Robin M.*
*Hamilton*,

        Plaintiff,

    vs.

COUNTY OF MADISON, STATE OF
ILLINOIS, *et al.*,

        Defendants.

Case No. 08-cv-890-SMY-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion *in Limine* (Doc. 159).  The

Court heard argument on the Motion on February 4, 2015.  For the following reasons, the Court

grants in part and denies in part the motion.

At the hearing, Plaintiff indicated he had no objection to Motions *in Limine* Numbers 5

through 15.  As such, the Court grants Defendants' Motions *in Limine* Numbers 5 – 15.  With

respect to Motion *in Limine* Number 5, the Court grants the Motion only with respect to the

adequacy of the Madison County Jail's policies and procedures.  Accordingly, the Court

**ORDERS** that Plaintiff shall not argue or produce evidence regarding the following subjects:

adequacy of Madison County Jail's policies and procedures (MIL 5); liability of any of the

dismissed Defendants (MIL 6); any application for insurance, insurance policy, or statement or

testimony concerning whether Defendants may have insurance in connection with Plaintiff's

claim (MIL 7); any indication of the size of the law firm representing Defendants (MIL 8); any

reference to settlement negotiations or the lack thereof (MIL 9); the current or former financial

status or size of Defendants (MIL 10); any reference to allegations, investigations, claims,

lawsuits status of lawsuits, or other matters asserted against any Defendant (MIL 11); any

reference to any statements or photographs not previously provided to defendants' attorney and

any testimony by a witness or expert witness not previously identified (MIL 12); any testimony

or documents pertaining to the personal lives of Defendants (MIL 13); any references to Plaintiff

as a "victim" or "victimized" (MIL 14); and the fact that Defendants filed this motion *in limine*

or any other motions *in limine* (MIL 15).

### MIL Number One

Defendants' Motion *in Limine* Number One seeks to exclude evidence regarding

Plaintiff's previous medical care at the Madison County Jail, his high school records, and any

other evidence prior to his detention at the Madison County Jail because they are irrelevant,

unfairly prejudicial, confuse the issues, and waste time.

The Court finds that any evidence relating to Plaintiff's previous medical care at the

Madison County Jail, his high school records, or other evidence prior to his detention at Madison

County jail are not relevant to any remaining facts to be found by the jury.  As such, the Court

grants Motion *in Limine* Number One.

### MIL Number Two

Defendants' Motion *in Limine* Number Two seeks to exclude evidence of prior suicides

and suicide attempts at the Madison County Jail.  Defendants argue that "the fact that other

inmates attempted suicide does not demonstrate that the jail policies were inadequate or that

officials were aware of any suicide risk posed by the policies or that officials failed to take

appropriate steps to protect Plaintiff" (Doc. 159).

The Supreme Court has explained that:

> [w]hether a prison official had the requisite knowledge of a substantial risk is a
> question of fact subject to demonstration in the usual ways, including inference

from circumstantial evidence, cf. Hall 118 (cautioning against "confusing a mental state with the proof of its existence"), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of"). For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994).

Here, as the Court indicated in *Farmer v. Brennan*, the previous suicides would serve as evidence showing that the risk of suicide by detainees at the jail was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past."  The evidence would further suggest that the Defendants "had been exposed to information concerning the risk and thus must have known."  This evidence would thus permit the jury to conclude that Defendants had actual knowledge of the risk of suicide to Plaintiff and it is relevant.  However, the Court believes that the potential prejudice associate with this evidence outweighs its probative value.  Even with careful instruction, jurors may conclude that Defendants are liable because they "should have known" about the risk of suicide to Plaintiff rather than determining that Defendants were actually aware that Plaintiff was suicidal.  As such, the Court grants Motion *in Limine* Number Two.

### MIL Number Three

Defendants' Motion *in Limine* Number Three seeks to exclude letters written by Plaintiff. Plaintiff seeks to introduce a letter, characterized as a "suicide note," written by Plaintiff to family members and retrieved after Plaintiff's suicide attempt.  Defendants argue the letter is

inadmissible because it does not indicate Defendants' subject knowledge of Plaintiff's imminent

risk of suicide.  Plaintiff argues the letter is admissible as a dying declaration.

> The letter in question reads as follows:

> Don't think im weak for what im about to do.  I will never snitch i  wuld rather
> die  tail Paris i love her in let her no im sorry tail her that the world was to much
> for me make her understand for me pleas I love u and i  wish I culd have seen u
> one more last time everybody thinks im playen or joking but this is real.

> I just cant take it no more I wuld rather die I tryed  to talk to the crisis lady but
> thay ant let me I told them no one listen to me. (sic)

(Doc. 60-2, p. 40).  In the margin, the letter further states: "the guards keep fucking with me" and

"I Love u G-ma Shirley sorry" (*Id.*).

A dying declaration is "a statement made by the declarant while believing that the

declarant's death was imminent, concerning the cause or circumstances of what the declarant

believed to be impending death."  Fed. R. Evid. 804(b)(2).  In order for a statement to qualify

under this hearsay exception, the Supreme Court has explained

> the declarant must have spoken without hope of recovery and in the shadow of
> impending death.... Fear or even belief that illness will end in death will not avail
> itself to make a dying declaration. There must be a "settled hopeless expectation"
> that death is near at hand, and what is said must have been spoken in the hush of
> its impending presence.... The patient must have spoken with the consciousness of
> a swift and certain doom.

*Shepard v. United States*, 290 U.S. 96, 99-100 (1933).

"The length of time elapsing between the making of the declaration and the death is to be

considered, although . . . it is the impression of almost immediate dissolution, and not the rapid

succession of death, that renders the testimony admissible."  *Mattox v. United States*, 146 U.S.

140, 151 (1892).  "The evidence must be received with the utmost caution, and, if the

circumstances do not satisfactorily disclose that the awful and solemn situation in which he is

placed is realized by the dying man because of the hope of recovery, [the declaration] ought to be

rejected." *Id*. at 152.  In addition to the declarant's belief in imminent death, the declarant's

statement must directly relate to the cause or circumstances of the imminent death.  Fed. R. Evid.

804(b)(2); *see also Sternhagen v. Dow Co.*, 108 F. Supp.2d 1113, 1117 (D. Mont. (1999)

(declarant's statement expressing belief that defendant's chemicals caused his illness and death

admissible as dying declaration).

Other courts have addressed the admissibility of suicide notes under the dying declaration

exception to the hearsay rule.  In *State v. Satterfield*, 457 S.E.2d 440 (W. Va. 1995), a murder

case, the court admitted a suicide note under the dying declaration exception.  In *Satterfield*,

questions directed toward a witness suggested the witness committed the murders.  *Id*. at 447.

That night, the witness committed suicide leaving behind a suicide note declaring his innocence.

*Id*.  The Court concluded the suicide note was a dying declaration noting that the witness

believed death was imminent because he committed suicide soon after writing the note.  Also,

the note explained the reasons the witness killed himself "thereby explaining the causes or

circumstances which led to his death."  *Id*.  Other courts have found suicide notes not admissible

as dying declarations where they did not concern the causes or circumstances of the declarant's

death.  *See United States v. Layton*, 549 F. Supp. 903, 918 (N.D. Cal. 1982); *see also United

States v. Lemonakis*, 485 F.2d 941, 957 n.24 (D.C. Cir. 1973).

Here, like in *Satterfield*, Pittman penned the suicide note while under the belief that death

was imminent as evidenced by his subsequent, near-successful suicide attempt.  Also, the note

explained the reasons Pittman wanted to kill himself.  Specifically, the note says he would rather

die than "snitch."  Also, he indicates "the guards keep fucking with me" and would not let him

"talk to the crisis lady."  The Court also finds it relevant to its analysis that Pittman's note was

written only a couple of hours before his suicide attempt.  As such, Pittman's suicide note

qualifies as a dying declaration.  It is clearly relevant in this case and its probative value is not

outweighed by any prejudice.  As such, it is admissible under the dying declaration exception.

### MIL Number Four

Defendants argue that Plaintiff's expert Dr. David Kan should be excluded from

providing testimony because he is unqualified and his testimony is irrelevant.  Specifically,

Defendants argue Dr. Kan has insufficient experience and training in the jail setting.  To

determine if an expert is qualified to testify on a particular matter, a court should "consider a

proposed expert's full range of practical experience as well as academic or technical training."

*Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  However, generalized knowledge

within an area is not necessarily enough to qualify an expert:

> [A]n expert's qualifications must be within the same technical area as the subject matter
> of the expert's testimony; in other words, a person with expertise may only testify as to
> matters within that person's expertise.  Generalized knowledge of a particular subject will
> not necessarily enable an expert to testify as to a specific subset of the general field of the
> expert's knowledge.

*Martinez v. Sakurai Graphic Sys. Corp.*, No. 04 C 1274, 2007 WL 2570362, at * 2 (N.D. Ill.

Aug. 30, 2007) (citing *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1390 (C.D.

Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994)).

The Court finds Defendants' position unpersuasive.  Dr. Kan's opinions regarding suicide

do not require that he have extensive experience or training in a jail environment.  His

experience and training in other environments, including his own private practice, is sufficient to

qualify Dr. Kan as an expert to testify about suicide risks.  Dr. Kan is a licensed physician who

specializes in criminal and forensic psychiatry in his private practice.  His experience also

includes a one-year fellowship wherein he evaluated and treated criminal defendants in San

Quentin State Prison.  Considering these factors and the other experience listed in Dr. Kan's

curriculum vitae, the Court finds Dr. Kan is qualified to render an opinion regarding suicide risks

and denies Defendants' Motion *in Limine* Number Four.  Defendants remaining arguments are

addressed in this Court's Order denying Defendants' Motion to Bar Dr. Kan.

### Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part**

Defendants' Motion *in Limine* (Doc. 159).  Specifically, the Court **GRANTS** Motions in *Limine*

Numbers One, Two, and Five through Fifteen; and **DENIES** Motions *in Limine* Numbers Three

and Four.


**IT IS SO ORDERED.**

**DATED:**  February 10, 2015

<div align="center" style="margin-left:50%">

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**

</div>