IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REGINALD PITTMAN, *By and through his Guardian and Next Friend, Robin M. Hamilton*,

Plaintiff,

vs.

COUNTY OF MADISON, STATE OF ILLINOIS, *et al.*,

Defendants.

Case No. 08-cv-890-SMY-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion for New Trial (Doc. 199). Defendant filed a Response and Plaintiff filed a Reply (Docs. 222 & 225). Plaintiff argues that he is entitled to a new trial because (1) the Court erred in not transferring venue to East St. Louis from Benton, Illinois, (2) the verdict was against the manifest weight of the evidence, and (3) the Court erred in making certain evidentiary rulings and rulings regarding jury selection. For the reasons that follow, Plaintiff’s motion is **DENIED**.

In ruling on a motion for new trial, Federal Rule of Civil Procedure 59 requires "a district court to determine 'whether the verdict is against the manifest weight of the evidence…or for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (quoting *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1146, 1460 (7th Cir. 1992) (internal citation omitted). A verdict should be determined to be against the manifest weight of the evidence "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995.

The district judge who "heard the same testimony as the jury" and "observed the witnesses' demeanor just as the jury did" can assess the evidence, including the witnesses' credibility. *Thomas v. Statler*, 20 F.3d 298, 304 (7th Cir. 1994). Thus, the district court may consider the credibility of the witnesses, the weight of the evidence, and anything else justice requires. *Mejia v. Cook County, Ill.*, 650 F.3d 631, 633 (7th Cir. 2011). With the standards in mind, the Court will address Plaintiff's arguments.

**Jury Selection**

On August 26, 2014, this matter was re-assigned to the undersigned district judge whose duty station is Benton, Illinois (Doc. 135). As a result, the trial location was changed from the courthouse in East St. Louis, Illinois to the courthouse in Benton, Illinois (Doc. 136). Plaintiff, an African American, alleges that as a result of moving the trial from East St. Louis to Benton, there were no African Americans on the jury panel. As such, Plaintiff argues that relocating the trial "constituted impermissible discrimination against the plaintiff's right to a jury made of a cross-section of the community and containing members of his on race." (Doc. 199, paragraph 10). Plaintiff further asserts that the decision to transfer the case from East St. Louis to Benton was arbitrary and made for the Court's benefit only (Doc. 200).

On January 13, 2015, Plaintiff filed a motion seeking to retain the undersigned as trial judge but to have the case tried in East St. Louis "if possible" (Doc. 149). The motion asserted that Plaintiff's severe brain damage and disability made travel difficult and that traveling from Plaintiff's home in Alton, Illinois, to Benton, Illinois created a hardship for Plaintiff. Id. The motion further asserted that every subpoenaed witness expressed that they preferred appearing in East St. Louis and that trying the case in East St. Louis would be more convenient for the attorneys Id. Additionally, in the motion, Plaintiff's Counsel noted "it is the understanding of the

attorney for the plaintiff that the jury pools at the Benton and East St. Louis courthouses are different – although the divisions in the Southern District of Illinois have been eliminated as of 1988, jury selection, apparently does not take place from a district wide pool, but rather takes place from counties within the old division boundaries, so that the East St. Louis jury pool is taken from the old northern division counties and the Benton jury pool is taken from the old southern division counties. The attorney for the plaintiff believes that there are greater chances of African American jurors in the East St. Louis jury pool and believes, therefore, for a fair trial, the matter should be held in the East St. Louis." Id.

In denying Plaintiff's motion, the Court noted the preference convenience of witnesses and Plaintiff's Counsel of trying the case in East St. Louis as well as Plaintiff's Counsel's arguments regarding the racial composition of jury panels in East St. Louis versus Benton and the potential impact on Plaintiff's ability to receive a fair trial. The Court also noted that while holding trial at the E. St. Louis courthouse may have been more convenient for counsel and witnesses, the Court has inherent power to manage itself, its resources and its caseload as it sees appropriate. However, the Court advised Plaintiff's Counsel that if he provided the Court with statement from a healthcare provider indicating a health and safety issue for Plaintiff associated with having the trial in Benton rather than East St. Louis, the it would reconsider moving the trial (Doc. 160, p. 2). No such statement was provided prior to trial. As such, the Court's decision to hold trial in Benton rather than East St. Louis was not arbitrary; trial was held in Benton in keeping with the policy of the Southern District of Illinois to effectively manage the caseload of its judges.

With respect to Plaintiff's contention that he did not have a fair cross-section of the community serve on the jury because there were no African Americans in the jury pool, the right

to a jury trial in civil cases is based on the Seventh Amendment and the Supreme Court has not recognized a Constitutional mandate that jury pools in civil cases reflect a fair cross-section of the community. See *Fleming v. Chicago Transit Authority*, 397 Fed. App'x. 249 (7th Cir. Oct. 22, 2010). There is no doubt that racial discrimination in the selection of jurors in a civil trial may result in an unfair trial to a litigant and calls into question the integrity of the judicial system. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 630 (1991). However, a litigant does not have the right to demand "a jury of a particular racial composition." *Sargent v. Idle*, 212 F.App'x 569, 573 (7th Cir. 2006). In addition, courts have held that a post-trial challenge to the composition of a jury are untimely and are therefore barred. See *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 210 (5th Cir. 1992).

Here, Plaintiff has not alleged that any of the jurors were biased against him. Moreover, Plaintiff did not object to composition of the jury during voir dire or any other time during trial, but raises it for the first time in his Motion for New Trial. Thus, Plaintiff's challenge to the jury composition is untimely and barred.

**Manifest Weight of the Evidence, Credibility of Witnesses**

To prevail on an Eighth Amendment deliberate indifference to serious medical needs claim, the plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. The Seventh Circuit considers the following to be objective indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain, (2) [e]xistence of an injury that a reasonable doctor or patient would find important and worth of comment or treatment, (3) presence of a medical condition that significantly affects an individual's daily activities, or (4) the existence of

chronic and substantial pain." *Gutierrez v. Peters* 111 F.3d 1364, 1373 (7th Cir. 1997). To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer*, 511 U.S. at 837.

At trial, Bradley Banovz, an inmate at the time of Plaintiff's suicide attempt, was the only witness to testify that Plaintiff made a crisis intervention request to Defendants Eaton and Werner on December 17, 2017. Initially, Banovz testified that he did not "know if he really said he was suicidal then but he said, you know *I just really, really need to talk to somebody…*" (emphasis in transcript) (Tr. Tran. Day 2, Doc. 213, p. 125). Banovz's testimony was sharply disputed.

Barbara Unfried, a nurse at the jail, testified that she had not received sick slips from Plaintiff between the dates of November 24, 2007 and December 19, 2007 (Tr. Tran. Day 3, Doc. 214, p. 45). Defendant Eaton testified that had Plaintiff indicated he was depressed or suicidal, he would have acted on that information and would have documented it (Tr. Tran. Day 6, Doc. 217, p. 70). Further, Eaton indicated that he did not know that Plaintiff was depressed, and was unaware of any past history of suicide attempts (Tr. Tran. Day 6, Doc. 217, p. 73).

Defendant Werner testified that he did not recall Plaintiff making any remarks or otherwise indicating to him that he was suicidal (Tr. Tran. Day 6, Doc. 217, p. 139). He also testified that Banovz never informed him that Plaintiff was suicidal (Tr. Tran. Day 6, Doc. 217, p. 84).

It was within the purview of the jury to decide these disputed facts in favor of Defendants and to conclude that neither Defendant was aware of a substantial risk of harm to Plaintiff. They did so and the record supports the jury's determination. *Gower v. Vercler*, 377 F.3d 661, 666-67

(7th Cir. 2004). Accordingly, the jury's verdict was not contrary to the manifest weight of the evidence.

**Evidentiary Rulings**

Plaintiff argues that the Court made several erroneous evidentiary rulings: the Court erred by not admitting into evidence Defendant Eaton's supplementary report and Banovz's recorded statement; by allowing Plaintiff's criminal history to be displayed to the jury; by not allowing Plaintiff's Representative at First Financial Bank testify; by not submitting the issue of liability of an unnamed guard to the jury; and by not dismissing certain jurors for cause. An erroneous evidentiary ruling merits a new trial only if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Young v. James Green Management, Inc.,* 327 F.3d 616, 623 (7th Cir. 2003) (quoting *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998).

***Randy Eaton's Supplementary Report***

Plaintiff sought to introduce a report prepared by Defendant Eaton for impeachment purposes. The report detailed a suicide attempt by a different inmate 11 months prior to Plaintiff’s suicide attempt (Doc. 164. Ex. A). At trial, Eaton testified about the policies and procedures for addressing a potentially suicidal inmate (Tr. Tran. Day 6, Doc. 217, p. 33-34). He specifically testified that his custom and practice was to talk to an inmate who mentioned suicide and find out if the inmate's comments had merit. (Tr. Tran. Day 6, Doc. 217, p. 36). If he deemed the comments had merit, he would refer the inmate to Crisis and would make a note of it in the records. (Tr. Tran. Day 6, Doc. 217, p. 36). Plaintiff argued that the report was a prior inconsistent statement because it showed that Eaton did not always follow the procedure for handling a suicidal inmate as he testified (Tr. Tran. Day 6, Doc. 217, p. 34).

The Court ruled that the report was irrelevant and did not contradict Eaton's testimony (Tr. Tran. Day 6, Doc. 217, p. 36). The Court noted that, although on cross examination, Plaintiff's Counsel had attempted to elicit testimony that Eaton always sent a slip to Crisis, he testified on more than one occasion, that it depended on the situation—that he would talk to the inmate to determine if it had any merit, and if he thought it had merit, he would refer the inmate to Crisis.

Prior inconsistent statements may be used to impeach the credibility of a witness, but the Court must first be satisfied that the prior statement was in fact inconsistent with the witness's testimony. *Grunewald v. U.S.*, 353 U.S. 391 (1957). Here, the Court determined that statement was not inconsistent because Defendant Eaton testified that whether he refers an inmate to crisis counseling depends on the circumstances (Tr. Tran. Day 6, Doc. 217, p. 31). Thus, the ruling that the statement was inadmissible was not in error.

***Statement of Bradley Banovz***

Plaintiff also sought to present a video statement of Bradley Banovz and to admit the transcript of the statement into evidence. Banovz's cell was adjacent to Plaintiff's cell at the time of Plaintiff's suicide attempt. Banovz provided the video statement to Detective Presson three hours after Plaintiff was found in his cell. In the video statement, Banovz stated that Plaintiff had been upset recently, that he spoke with Eaton and Werner and requested to see a crisis counselor, that Werner and Eaton told Plaintiff they would put in a request for him, but that no request was ever actually made (Doc. 199-4, p. 4). Banovz also stated in the video that Plaintiff had mentioned committing suicide the week prior, but that Banovz understood Plaintiff to be joking. (Doc. 199-4, p. 9).

Plaintiff argues that the video as well as the transcript should have been admitted in its entirety as a past recollection recorded (Fed. R. Evid. 803(5)), a present sense impression (Fed. R. Evid. 803(1)), a prior consistent statement (Fed. R. Evid. 801(d)(1)(B)), or as a general exception to hearsay (Fed. R. Evid. 802). Pursuant to Rule 803(5), a document may be read to the jury if (1) the witness once had knowledge about matters in the document, (2) the witness now has insufficient recollection to testify fully and accurately and (3) the record was made or adopted at a time when the matter was fresh in the witness's memory and reflected to his knowledge correctly. *United States v. Cash*, 394 F.3d 560, 564 (7th Cir. 2005).

At trial, the Court determined that Plaintiff had failed to lay a proper foundation that Banovz lacked the appropriate recollection under F.R.E. 803(5) (Tr. Tran. Day 2, Doc. 213, p. 141-43). Nevertheless, Banovz was able to review the statement on the stand and testify to its contents (Tr. Tran. Day 2, Doc. 213, p. 153).

Plaintiff also argues that the video statement and transcript should have been admitted as a prior consistent statement. Plaintiff's contention that the Court ruled that the statement was inadmissible as a prior consistent statement is inaccurate—the Court ruled that the statement could be presented at trial with limitation—portions of the statement would be allowed to rebut a charge of recent fabrication or improper influence or motive, but were not allowed to bolster the veracity of the witness's testimony (Tr. Tran. Day 6, Doc. 217, p. 126-128). Plaintiff argued that the entire statement was necessary to rebut "admissions" made by Defense counsel during opening statement (Tr. Tran. Day 2, Doc. 213, p. 150).

An opening statement is neither evidence nor argument; it is simply an outline of what the lawyer expects will be proven during the course of the trial. *Testa v. Village of Mundelein*,

*Ill.*, 89 F.3d 443, 446 (7th Cir. 1996). As such, the Court properly ruled that the statements were inadmissible for the purpose of rebutting statements made during opening statements.

Plaintiff also contends that a stipulation existed between Defendants and Plaintiff regarding the admissibility of Banovz's statement (Doc. 213, p. 147). Plaintiff cites to *United States v. Kanu*, 695 F.3d 74 (D.C. Cir. 2012) to support his position that the stipulation was enforceable and the Court erred in not enforcing it. While *Kanu* states that "[s]tipulations, like admissions in the pleadings, are generally binding on the parties and the court…" it also states that "'the trial court may, in the exercise of sound judicial discretion and in furtherance of justice, relieve parties from stipulations into which they have entered.'" *Kanu*, 695 F.3d at 78 (quoting *Nat'l Audubon Soc'y., Inc. v. Watt*, 678 F.2d 299, 311 n. 28 (D.C. Cir. 1982)).

Here, the parties never filed a stipulation about the statement, but reached the agreement between themselves. The Court ruled that it would not be bound by the agreement because the statement was hearsay. Additionally, Plaintiff was not prejudiced by the ruling because, while the statement itself was not admitted into evidence, Banovz was permitted to testify as to its contents during direct examination by Plaintiff (Doc. 213, p. 152).

Plaintiff further argues that the statement should have been admitted as a present sense impression under Rule 803(1). A present sense impression is a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. Fed. R. Evid. 803(1). "There is no per se rule indicating what time interval is too long under Rule 803(1)." *Alexander v. Cit Technology Financing Services, Inc.*, 217 F.Supp.2d 867, 882 (N.D. Ill. 2002). Here, Plaintiff did not seek to admit the statement as a present sense impression. Additionally, the statement was not taken immediately after the incident in question, but rather three hours later (Doc. 213, p. 152). The statement also included information relating

to events occurring days and weeks prior to Plaintiff's suicide attempt (Doc. 199-4). Therefore, even if Plaintiff had moved to admit the statement as a present sense impression, it would not have been admissible.

Plaintiff also claims that Banovz's statement constituted an "excited utterance," and thus should have been admitted, pursuant to Rule 803(2). Rule 803(2) provides that a statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused is an exception to hearsay. To qualify as an excited utterance, the declarant must have personally perceived the event in question. *United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999). Due to the 3-hour lapse in time between the incident and Banovz's statement and the fact that Banovz did not actually witness Plaintiff's suicide attempt, the video does not qualify as an excited utterance.

Finally, Plaintiff contends that Banovz's statement was admissible under the "catch all" exception to the hearsay rule. Under this exception, a hearsay statement is not excluded if "(1) the statement has equivalent circumstantial guarantees of trustworthiness, (2) it is offered as evidence of a material fact, (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts and (4) admitting it will best serve the purposes of these rules and the interests of justice." (Fed. R. Evid. 802).

Again, Plaintiff did not seek to admit the statement under this exception at trial and, therefore, did not lay a foundation that the statement was offered as a material fact, that the statement was trustworthy, that it is more probative than any other evidence or that the interests of justice would have been served by admitting the statement. Plaintiff cannot now claim that the Court was in error by not admitting the statement under this hearsay exception.

***Display of Criminal Information to the Jury***

Plaintiff also argues that he was prejudiced when an Information regarding his criminal case was included in an exhibit consisting of photographs of Plaintiff's cell (See Docs. 199-5, 199-6). The photo series includes photos of Plaintiff's cell which also show documents regarding his criminal case within the cell. (Docs. 199-5, 199-6). Plaintiff introduced the series of photographs during the testimony of Detective Presson (Tr. Tran. Day 2, Doc. 213, p. 84-5).

In *United States v. Danford*, 435 F.3d 682, 686-87 (7th Cir. 2005) the Court determined that prejudicial yet irrelevant information inadvertently published to the jury did not warrant a mistrial because the information was before the jury for only about one minute. Additionally, "[i]t is well-settled law that a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented. *Abel v. Miller*, 824 F.2d 1522, 1535 (7th Cir. 1987).

In this case, Plaintiff was the party who moved to admit the photographs into evidence (Tr. Tran. Day 2, Doc. 213, p. 112). The witness was asked to hold up the photos for the jury to see (Tr. Tran. Day 2, Doc. 213, p. 109). Plaintiff subsequently moved to have the photographs showing the criminal history removed from the exhibit, which the Court allowed (Tr. Tran. Day 2, Doc. 213, p. 112). Like in *Danford*, the amount of time the photograph was published was minimal—the jury was exposed to the photo for 15 seconds—and the defect was quickly corrected. More importantly, there is no indication in the record that Plaintiff was prejudiced as a result of the photograph being shown.

***Plaintiff's Representative, James Mulvaney***

Plaintiff sought to present the testimony of Mulvaney, a bank representative who was appointed as Co-Guardian of Plaintiff's Estate (Doc. 176). Defendants argued that the testimony

should be barred on the bases of relevancy and materiality (Doc. 176). The Court agreed with Defendants (Tr. Tran. Day 2, Doc. 213, p. 6-7). Specifically, the Court found that evidence regarding the purpose of the guardianship and how it would affect a potential recovery had nothing to do with liability or damages, or any other issue at trial. (Doc. 213, p. 6). Additionally, the Court invited Plaintiff to submit an offer of proof as to why Mulvaney's testimony would be relevant, but Plaintiff declined to do so (Tr. Tran. Day 2, Doc. 213, p. 7). Finally, Plaintiff has failed to establish that he was prejudiced as a result of Mulvaney not testifying.

***Liability of Unnamed Guard***

Bradley Banovz testified that an unnamed guard was advised of the suicide potential of Plaintiff (Tr. Tran. Day 2, Doc. 213, p. 121). Plaintiff argues that the liability of the unnamed guard should have been submitted to the jury. However, Plaintiff did not include an instruction about the unnamed guard in his proposed jury instructions (Tr. Tran. Day 7, Doc. 218, p. 6-62). When a party does not ask for an instruction, reversal is required only if no reasonable juror could have found the evidence sufficient under the instructions heard. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir. 1985). Also, as previously noted, a party cannot complain of errors that it committed, invited or induced the court to make. See *Abel*, 824 F.2d at 1535. Thus, Plaintiff waived this argument.

***Dismissing Jurors For Cause***

Plaintiff contends that the Court erred in not dismissing jurors who indicated that they would require higher burden of proof (60 through 90 percent) to rule in Plaintiff's favor. Specifically, Plaintiff moved to strike three jurors (numbers 9, 13, and 17) for cause on this basis (Voir Dire. Tran. 2, Doc. 212, p. 157). Upon questioning, all three jurors indicated that they

could be fair and impartial and would follow the instructions given by the Court (Voir Dire. Tran. 2, Doc. 212, p. 158).

As the record reveals, Plaintiff's Counsel introduced the concept of percentages relative to the burden of proof and repeatedly asked the prospective jurors about percentages. Several prospective jurors responded that they were unsure how to answer Counsel's question about what percentage of proof they would require because the question was confusing and required them to be speculate (Voir Dire. Tran. 2, Doc. 212, p. 68). The Court did not strike the jurors for cause because it determined that they could be unbiased and impartial despite Counsel's confusing questioning. Further, Plaintiff was not prejudiced by the Court's refusal to strike these jurors for cause because Jurors 9, 13, and 17 were not selected for the jury.

**Conclusion**

For the foregoing reasons, the record does not reveal reversible error or a miscarriage of justice and the manifest weight of the evidence supports the jury's verdict. Accordingly, Plaintiff's Motion for New Trial is **DENIED**.

**IT IS SO ORDERED.**

**Date: July 28, 2016**

/s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**